**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JANE DOE** | **CIVIL ACTION NO.: 2:20-cv-02466** |
| **VERSUS** | **HON. JUDGE LANCE M. AFRICK** |
| **TONTI MANAGEMENT CO., L.L.C., SHERRI ROANE, SALLY BOYER AND LYNN MONTZ** | **HON. MAG. JUDGE MICHAEL B. NORTH** |
| | **JURY TRIAL REQUESTED** |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN AND SEVER THE COST-SPLITTING PROVISION IN THE ARBITRATION AGREEMENT**

MAY IT PLEASE THE COURT:

Defendants, APMT Management Services, LLC ("APMT"), improperly named in the Complaint as "Tonti Management Co., L.L.C.," Tonti Management Co., L.L.C., Sherri Roane, Sally Boyer, and Lynn Montz respectfully file this Memorandum in Opposition to Plaintiff's Motion to Reopen and Sever the Cost-Splitting Provision in the Arbitration Agreement (Doc. 83).

I.     **BACKGROUND**

A. **Factual Background**

Numerous prior pleadings have detailed the factual and procedural background of this case. Those facts will not be recounted here. For purposes of this Motion, however, it bears

1

emphasizing that, PACER's 86 docket entries notwithstanding, this is a simple case. It involves two cats and Plaintiff, a resident at Polo Run Apartments. One cat, Luna, is "solitary," "standoffish" and "unfit to serve as an emotional support animal." (Doc. 20, Ex. A ¶ 15). Luna lives with Plaintiff in the apartment. Gigi is the other cat. Plaintiff's friend, who lives in Kansas, owns Gigi (Id. at ¶17). Gigi has never been to Louisiana (Id.), and presumably neither Plaintiff nor Luna has ever met Gigi.[1] Plaintiff's friend describes Gigi as warm, loving, nurturing and well suited to serve as an assistance animal (Id.).

Plaintiff's therapist wrote a letter purporting to prescribe Gigi as an assistance animal for Plaintiff and, to a certain extent, Luna as well. The therapist's letter describes how Luna – who is solitary and standoffish – was somehow already contributing to the loving atmosphere of Plaintiff's home. With this letter, Plaintiff requested accommodation of Defendants' one-animal policy under the Fair Housing Act, 42 U.S.C. 3601 *et seq.* ("FHA"), asking that she be allowed to have both Luna and Gigi in the apartment. Defendants denied her request based upon the information presented but offered to allow her to swap out the solitary and standoffish cat for the loving and nurturing one she claims she urgently needed. To date, Plaintiff has not accepted this offer, inexplicably choosing to deprive herself of the cat she and her therapist claims she needs in favor of the standoffish one she doesn't.

**B.     Procedural Background**

Plaintiff filed her Complaint on September 9, 2020 (Doc. 1). Three weeks later, she filed a Motion for Preliminary Injunction containing a twenty-six-page Memorandum in Support, plus

---

[1] It is yet to be determined whether Luna and Gigi get along, something cats may or may not do.

exhibits (Doc. 20). After Defendants filed their brief in opposition, she submitted a ten-page Reply Brief (Doc. 36-2). In the interim, Defendants filed a Motion to Compel Arbitration and Stay (Doc. 30). The premise of Defendants' Motion was uncomplicated. In connection with the apartment lease, Plaintiff signed an arbitration agreement binding her to submit any claims, including Fair Housing Act claims, to arbitration. Plaintiff admits she voluntarily signed the arbitration agreement. That should have been the end of the matter. It was not. Instead, she filed a Motion to Defer Consideration of Motion to Compel Arbitration supported by a thirteen-page Memorandum (Doc. 32), an Exhibit, and after Defendants responded, a ten-page Reply Brief (Doc. 59). Shortly thereafter, she filed a Motion for Discovery (Doc. 40). Magistrate Judge North denied this Motion *sua sponte* before Defendants could respond, presumably finding it meritless on its face. (Doc. 47). Plaintiff then attempted to file a fifteen-page Surreply in further Opposition to Defendants' Motion to Compel Arbitration (Doc. 76). On February 22, 2021, the Court granted in part and denied in part Plaintiff's Motion for Leave, finding she had waived many of the arguments she intended to advance (Doc. 79).

On March 1, 2021, the Court granted Defendants' Motion to Compel Arbitration and Stay, denying Plaintiff's Motion for Preliminary Injunction and Motion to Defer Consideration of Motion to Compel Arbitration (Doc. 81). In so doing, the Court observed how Plaintiff advanced "so many" "facially untrue" (Doc. 81, p. 22), "perplexing[ly]" (Doc. 81, p. 19),

circular (Doc. 81, p. 23) and "differing and at times contradictory" (Doc. 81, p. 15) statements and arguments, some of which "make little sense" (Doc. 81, p. 22), in order to avoid arbitration.[2]

In its Order and Reasons, the Court refused Plaintiff's request to force Defendants to pay her share of costs associated with arbitration. Plaintiff had argued the arbitration agreement's cost-splitting provision would preclude her from effectively vindicating her federal statutory rights because she only has $25.00 to her name and arbitration would cost between $22,500 and $45,000 plus the $2,000 administrative fee. Recognizing the "significant" burden Plaintiff faces in demonstrating she will be unable to have her claims reviewed absent Defendants paying her way, the Court denied her Motion. The Court offered various options for the resolution of this issue, one of which being MAPS offering the services of a volunteer arbitrator.

Subsequently, Plaintiff's counsel reached out to MAPS' Managing Director, Joe Hassinger, about having an arbitrator volunteer his/her time to assist with this matter. (Doc. 83-2, Ex. B). As a courtesy to the parties and this Court, MAPS generously offered to "*waive all parties' costs and fees*"[3] and volunteered the services of a MAPS arbitrator for 8 hours at no

---

[2] Defendants do not reference these issues as a form of disparagement. Rather, as discussed in greater detail below, the well-documented practice of over-litigating and over-complicating what should be straightforward factual and legal issues goes to the heart of the misguided premise of this Motion that it will take dozens of hours, and tens of thousands of dollars, to arbitrate. Defendants fully expect Plaintiff will attempt to flood the arbitrator with various Motions and requests for relief, unnecessarily dragging this case out, making it more complex than necessary and running up the arbitrator's and counsels' fees and costs, because that is what happened here. But as it was in this litigation, it need not be this way. And the law certainly does not obligate Defendants to sign a blank check to fund these Quixotic exercises.

[3] See, Doc. 83-2(Ex. B). There would be no $2,000 administrative fee and no other fees and costs, Plaintiff's suggestion notwithstanding (Doc. 83-1, n. 2). As such, argument and case citations pointing to the allegedly high initial filing costs of arbitration, and  how the initial filing/administrative costs allegedly create a barriers of entry to arbitration,  are absolutely immaterial to the instant matter because filing/administrative/service fees and costs will be $0, which is much more economical than litigation in Federal Court. (See, Doc. 83-6, specifically, Sanchez v. Nitro Lift Techs, LLC, 91 F. Supp. 3d 1218(E.D. OK 2015) (citing a $10,200 filing fee) and Spinetti v. Serv. Corp. Int'l, 324 F.3d 212 (3rd Cir. 2003)(citing a $4,000 filing fee)).

charge. Again, this should have ended the matter since MAPS complied with the Court's recommendation, allowing Plaintiff to have her claim reviewed at no cost. Unmoved by the offer, Plaintiff filed the instant Motion asking the Court to reopen this case, sever the arbitration agreement's fee-splitting provision and compel Defendants to pay ALL of her arbitration costs above and beyond the 8 hours MAPS has graciously donated. Plaintiff claims this is a uniquely complex case (try as hard as she might to make it one, it isn't) that will consume between 15 and 40 hours of an arbitrator's time spread out over as many as five days.

### C.   Declaration of Elizabeth Joanne Owen

In support of her Motion, Plaintiff attaches the Declaration of Elizabeth Joanne Owen. (Doc. 83, Ex. D). For eight years, Ms. Owen was the Legal Director of the Louisiana Fair Housing Action Center. She claims she has enrolled as counsel of record in thirty federal court cases alleging housing discrimination. Conspicuously, Ms. Owen's Declaration does not suggest she has ever arbitrated any cases much less ones involving the FHA. If she has any arbitration experience in her thirteen years of practice, one would assume she would have trumpeted this critical fact. She did not. Also lacking from her Declaration is any suggestion she has ever actually tried a FHA case. Enrolling in cases and trying cases are completely different things. Her purported expertise rests in the fact that she has "enrolled as counsel of record" in thirty cases involving housing discrimination, and has handled dozens of housing discrimination complaints filed with H.U.D. She does not disclose whether she has ever handled a FHA case or H.U.D complaint where the dispute focused on two cats, one a pet and the other an emotional support animal.

Ms. Owen estimates the evidentiary hearing in arbitration (something she has presumably never handled) would last approximately three days, while pre-evidentiary hearing disputes (which she has also presumably never handled) would last approximately two days. Notably, her Declaration is silent about how long it would have taken and how much it would have cost to litigate this FHA case in Federal Court as compared to arbitration.

  **D.**  **Declaration of Scott M. Badami, Esq.**

In opposition to Plaintiff's Motion, Defendants offer the Declaration of Scott M. Badami, Esq. (Exhibit A). Mr. Badami is an attorney who practices at the Fox Rothschild law firm in Pennsylvania. For more than twenty years, he has been involved as lead counsel in hundreds of FHA cases in state and Federal Courts from Alaska to Florida.  He trains housing providers on compliance with the FHA.  Mr. Badami explained the challenges housing providers face with the authenticating ESA verifications from various healthcare providers.  He explained the steps housing providers can take to authenticate the letters they receive from these providers.  He reviewed the pleadings in the instant case.  It is his opinion that, despite Plaintiff's effort to over-complicate and over-litigate this case, the fair housing issues this matter presents are straightforward and can be arbitrated in one day, disagreeing with the Declaration of Elizabeth Owen.  In his experience, arbitration is more efficient, less expensive and takes less time than a full trial in Federal Court.

## II.     LAW AND ARGUMENT

### A.  Legal Standard For Motions to Reconsider

Though not styled as a Motion to Reconsider, and as the body of Plaintiff's pleading correctly recognizes, the subject Motion is tantamount to a Fed. R. Civ. P. Rule 54(b) Motion to Reconsider the Court's March 1, 2021 Order & Reasons denying her request that Defendants be ordered to pay all of her arbitration costs. The standard of review for Motions to Reconsider is much more exacting than Plaintiff describes. As this Court explained in H.S. Stanley v. Trinchard, 2010 WL 3271974 (E.D. La. 8/16/10) (per J. Africk), "Although the district court's discretion in this regard is broad…it is *exercised sparingly* in order to forestall the perpetual reexamination of orders and the resulting burdens and delays" (Internal citations omitted and emphasis added). The Court went further, stating that Rule 54(b) Motions to Reconsider are "not the proper vehicle for rehashing evidence, legal theories or arguments that could have been offered or raised before entry of judgment… but instead serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." (Id., internal citations omitted). Defendants respectfully submit there are no manifest errors of law in the Court's ruling, nor has any newly-discovered evidence been presented necessitating the *sparing* exercise of the Court's discretion to reconsider its prior ruling.

### B.     The FHA Permits Cost Shifting in Arbitration Agreements

"Arbitration can be compelled for claims under the Fair Housing Act." Kothe v. AIMCO, No. 06-2097-CM, 2007 WL 2725975, at *2 (D. Kan. Sept. 17, 2007). This principle is not controversial, as the United States Supreme Court has endorsed the use of arbitration in cases

involving federal statutory claims. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991). As it relates specifically to the FHA, in a case involving the same defendant and a substantially similar arbitration agreement in a substantially similar lease, another Division within the Eastern District determined that there was no federal law or policy prohibiting arbitration of an FHA claim, even those with a cost-shifting provision such as this one. Turnipseed v. APMT, LLC, No. CV 18-5187, 2018 WL 5977889, at *3 (E.D. La. Nov. 14, 2018)(per, J. Barbier).

Just as in the instant case, plaintiff in Turnipseed argued against compelling arbitration because she could not afford to arbitrate, arbitration would be cost-prohibitive and cost-splitting rendered her unable to vindicate her statutory rights. Id. The lease in Turnipseed, like the one here, contained a provision stating "each party shall be responsible for his/her/its own deposits, costs, fees (including but not limited to attorney's fees) and expenses associated with arbitration." Id. at 3. Judge Barbier was not persuaded by plaintiff's argument that the arbitration agreement acted as a "waiver of [her] right to pursue statutory remedies," ordering that she submit her claims to arbitration as follows:

> The Court acknowledges the presence of competing interests, but Congress's decision to allow fee-shifting under the FHA is not sufficient to negate its specific command that arbitration agreements are to be given full force. Arbitration is compelled by the Parties' bargain; *the arbitrator will decide whether the cost and fees provision is enforceable in this case.* Id. at 3. (Emphasis added)

The Court also cited in American Express Co. v. Italian Colors Restaurant, 570 U.S. 228, 236 (2013). Plaintiffs in Italian Colors complained that enforcement of arbitration provisions prevented them from effectively vindicating their rights by going forward with a class action, which was the only economically feasible way for plaintiffs to bring their claims. Plaintiffs

argued that forcing them to pay for arbitration acted as a "waiver of a [plaintiff's] right to pursue statutory remedies." Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 653 (1985)). As Judge Barbier observed, the Supreme Court rejected that argument: "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy." Id. In Turnipseed, a case in which plaintiff claimed she lacked the financial resources to pay for arbitration, Judge Barbier held: "Given that Plaintiff's *right to pursue* her remedy has not been eliminated in this case, the Court cannot find that the FHA prohibits enforcement of the arbitration agreement in this case." Id (Emphasis in original).

Here, consistent with Turnipseed, Plaintiff's right to pursue her remedy has not been eliminated. She has a right to pursue her case in arbitration. There has been no elimination of that right. Even still, MAPS has donated eight hours of an arbitrator's time and waived all of its costs towards the goal of affording Plaintiff the right to pursue her remedy. Whether she feels it is worth the time and expense of pursuing arbitration beyond the donated eight hours is a different question entirely, and a question whose answer would not invalidate the cost-shifting provision in the subject arbitration agreement. Accordingly, Turnipseed and Italian Colors support the denial of Plaintiff's Motion.

### C.       Payment of Arbitration Costs Is an Issue Delegated to the Arbitrator

As the Court recognized in its Order & Reasons, the arbitration agreement at issue contains a valid delegation clause delegating to the arbitrator all issues concerning the "scope, validity and enforceability" of the arbitration agreement. This "limits this Court's role in this

matter significantly" to the threshold issue of contract formation. (Doc. 81, p. 6). Plaintiff now asks the Court to reconsider its position, re-expanding its role from simply analyzing contract formation to include ruling upon substantive contractual issues; namely, which party is responsible for bearing arbitration costs.

The cases cited below hold that when there is a valid delegation clause, as in this case, the arbitrator – not the Court – must rule upon the effective vindication defense and the allocation of arbitration costs. In Fusco v. Plastic Surgery Center, P.A., 2016 WL 3077843 (D. Maine 5/31/16), the Court held: "examination of the effective vindication issue must await the outcome of the arbitration hearing and the final decision by the arbitral tribunal as to who will pay what," citing, Thompson v. Irwin Home Equity Corp., 300 F.3d 86, 91-92 (1st Cir. 2002), and Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 15-16 (1st Cir. 1999). In Klinedinst v. Tiger Drylac, USA, Inc. 2001 WL 1561821 (D.D.H. 11/28/01), the Court held that plaintiff should submit the issue of excessive arbitration costs to the arbitrator after the arbitrator reaches a conclusion on the underlying case. The advantage of this approach is that, by the time the arbitrator reaches the costs and fees issue, the record will be less vague and speculative than it currently is now. Rather than speculating and guessing at this stage about how much it *might* cost to arbitrate an FHA case by looking at inapposite employment law cases, the arbitrator will have a complete record with which to fully evaluate the fee and cost issue.

Judge Lemelle reached the same result in Van Buren v. Pro Se Planning, Inc., 2014 WL 6485653 (E.D. La. 11/18/14). The arbitration agreement in Van Buren contained a valid delegation clause similar to the one here. Plaintiff challenged the agreement on the grounds that

arbitration would be prohibitively expensive. Citing Green Tree and related cases, the Court held that the allocation of arbitration costs and the effective vindication defense is "an issue properly delegated to the arbitrator under the express provisions" of the contract. Id. at p. 6.

Judge Barbier arrived at the same result in Turnipseed, supra. There, Plaintiff challenged the validity of an almost-identical arbitration clause involving the same party in this case, arguing its cost-splitting provision effectively deprived her of her statutory rights under the FHA because she was poor and could not afford the high costs of arbitration. Judge Barber rejected this argument, specifically holding: "***the arbitrator will decide whether the cost and fees provision is enforceable in this case***." Turnipseed, supra at 3 (Emphasis added).

Just as in Turnipseed, the arbitrator should decide whether the cost and fees provision is enforceable in this case. First, this result is compelled by the delegation clause. The Court has already found the delegation clause is valid, the Court's role in this case is limited and all issues other than contract formation must be submitted to the arbitrator. Allocation of fees and costs is a substantive issue the arbitrator must decide. Second, delegating this issue to the arbitrator would eliminate the rank speculation throughout Plaintiff's pleading about how much arbitrating this FHA case *might* cost and how long it *might* take. Witnesses will have testified. Exhibits will have been entered into evidence. Motions will have been filed, and the hearing will have been conducted. There will be absolutely zero room for speculation about what costs Plaintiffs *might* incur once the case is before the arbitrator.

While Defendants respectfully submit the inquiry should stop here, even if the Court were to disagree and conclude that the allocation of costs is not an issue delegated to the

arbitrator, Plaintiff's Motion still fails because she has not satisfied her substantial burden of proving: (1) without speculation, that she will incur arbitration costs that would prevent her from effectively vindicating her statutory rights; (2) whether a class of similarly situated apartment residents would be unable to vindicate their statutory rights under the FHA if she is required to pay her own costs; (3) that the cost of arbitrating this FHA case would be substantially higher than the cost of litigating this FHA case; (4) that she will even incur the arbitration costs; and (5) why Defendants must be compelled to write her a blank check to arbitrate this matter, allowing her to run up unlimited legal fees and arbitration costs filing circular, perplexing and contradictory motions and other unnecessary requests for relief, giving her a green light to make this simple case even more complex than it already has been made – at zero cost or risk to her.

### D.     *Green Tree* Prohibits Speculation About Arbitration Costs

Plaintiff relies heavily upon <u>Green Tree Fin. Corp.-Alabama v. Randolph</u> 531 U.S. 79 (2000) and several cases interpreting it which discuss cost-splitting associated with arbitration. The contract between Green Tree and Randolph was silent about the allocation of arbitration costs, and Randolph sought to avoid arbitration by alleging she faced the risk of and could not pay the prohibitive costs to participate in arbitration, thereby effectively depriving her of statutory rights. <u>Id</u>. The Supreme Court's opinion began by stating several propositions that are clearly established, all of which favor the use of arbitration: (1) arbitration agreements are enforced save upon such grounds as exist at law or in equity for the revocation of any contract; (2) generalized attacks on arbitration as a method of resolving disputes have been emphatically rejected; and (3) statutory claims are arbitrable unless Congress has evinced an intention to

preclude the waiver of a judicial forum when adopting the statute. Id. at 89-90. The Court found

that assertions of prohibitively high costs did not provide a basis for concluding that Randolph

would in fact incur such costs if the parties proceeded to arbitration, and that the record did not

show that this will occur. Id. at 91. The Green Tree Court went on to place the burden of proof

on the party claiming arbitration to be prohibitively expensive and determined that the risk that a

party might be "saddled with prohibitive costs is too speculative to justify" invalidating the

arbitration agreement. Id. at 91. The Court justified this conclusion in the following manner:

> (1) To invalidate the agreement on that basis **would undermine the "liberal federal policy favoring arbitration agreements."**
> …
> (2) It would also conflict with our prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.
> …
> (3) Similarly, we believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.[4]

> Id. at 91 (Internal citations omitted, emphasis added).

Speculation about what arbitration in an FHA case over cats *might* cost as compared to

employment law disputes is insufficient to satisfy Green Tree. Citing a variety of employment

law cases, Plaintiff attempts to convince the Court this is a complex matter. However, *none* of

those cases involves an alleged violation of the FHA over an ESA cat. Further, none of the cases

can be assumed to be analogous to the instant matter, as the opinions in those cases are silent

regarding the number of witnesses who testified, the quantity of exhibits offered, and the

complexity of the legal issues presented. Plaintiff candidly admitted she could find no cases

---

[4] Plaintiff candidly admits she bears the burden of proof with respect to this Motion.

discussing how long it takes or how much it costs to arbitrate any FHA, much less one about a cat. And while Ms. Owen offers opinions on this issue, her Declaration lacks the necessary foundation to conclude she has ever arbitrated, much less tried, a FHA case. Plaintiff could have offered Declarations from attorneys or arbitrators with experience arbitrating and trying FHA cases, but she did not. Thus, the fact that arbitration in various employment law matters may have taken 3 to 5 days has no bearing on the length of time it will take to arbitrate this straightforward FHA case involving a cat.

As Mr. Badami explains in his Declaration, this is a simple matter that should take no longer than one day to arbitrate. Indeed, the legal issues in this case are very straightforward. Under the FHA, 42 U.S.C. § 3601, Plaintiff must prove the following elements to establish her claim:

(1) That she suffers from a disability within the meaning of 42 U.S.C. § 3602(h);

(2) That the owner knew of her disability or reasonably should be expected to know of it;

(3) That an accommodation may be necessary to give the resident an equal opportunity to use and enjoy the dwelling;

(4) That the requested accommodation is reasonable; and

(5) The owner refused to make the accommodation.

For Plaintiff to meet her burden of proof, presuming she can, she would be required to only present testimony from herself, her therapist, and a representative of Defendant to answer all of those questions. Even if she felt compelled to call all seven witnesses identified in her motion, the arbitrator would not be obligated to permit duplicative or superfluous testimony, nor would

14

the arbitrator be obligated to consider Motions or requests for relief that are meritless on their face. Again, Defendants do not deny that Plaintiff will *try* to extend this arbitration to three days, five days or even longer. But there is no reason it cannot be fully and fairly litigated over the eight hours MAPS has generously donated to the parties.

Even if the Court were to conclude it will take longer than eight hours to arbitrate this case, which is denied, Plaintiff's Motion must still fail for the following reasons.

E.    ***Morrison v. Circuit City* is Fatal to Plaintiff's Position**

Plaintiff offers <u>Morrison v. Circuit City Stores, Inc</u>., 317 F.3d 646 (6th Cir. 1/30/03) as the leading case supporting the notion that the Court must compel Defendants to sign a blank check funding all of her arbitration costs above and beyond the eight hours MAPS donated, failing which she will be unable to effectively vindicate her statutory rights (Doc. 83-1, p. 7). The contrary is true. <u>Morrison</u> and its progeny are fatal to her position. <u>Morrison</u> is not a FHA case. Former Circuit City and Pep Boys employees filed Title VII actions alleging race and sex discrimination. Both employees were required to sign arbitration agreements as conditions of their employment. The arbitration agreements contained cost-splitting clauses. Significant to the Court was the fact that both employees had been recently terminated and were unemployed for a period of time, which formed the basis of the underlying Title VII litigation – a condition not present here. (<u>Id</u>. at p. 669). In that matter, plaintiffs presented evidence and argument indicating the cost-splitting provision would "deter a substantial number of similarly situated persons (i.e., recently terminated employees with Title VII claims) from attempting to vindicate their statutory rights." (<u>Id</u>. at 670). Because plaintiffs carried their burden of proving the cost-splitting clause

would deter "similarly situated" persons from pursuing their statutory rights, the Court declined to enforce the cost-splitting provision in the arbitration agreement.

Subsequent cases interpreting Morrison describe its holding as creating a "revised case-by-case approach" to determine whether arbitration costs would prohibit a litigant from vindicating her statutory rights. Stukes v. AIG Baker Orange Beach Wharf, LLC, 2008 WL 11425745 (S.D. AL 6/19/18). Under Morrison's revised case-by-case approach, litigants attempting to sever and invalidate a cost-splitting clause must not only offer evidence of: (1) her own inability to pay, she must offer evidence that (2) "define[s] the relevant class of 'similarly situated potential litigants' or provide[s] sufficient information about their own wherewithal to construct a relevant class whose vindication of rights might be deterred by the costs of arbitration." Id. at p. 4. Simply put, Morrison requires the party resisting arbitration "to demonstrate that the potential costs of arbitration are great enough to deter them and *similarly situated individuals* from seeking to vindicate their federal statutory rights in the arbitral forum." Id. (Emphasis added).

District Courts within the Fifth Circuit have endorsed Morrison's revised case-by-case approach, making it clear that parties attempting to invalidate cost-splitting clauses in arbitration agreements must present evidence that the provision "makes arbitration cost-prohibitive for a class of similarly situated plaintiffs." Del-Wise v. TaxMasters, Inc. 2011 WL 13257273 (S.D. Tex. 6/13/11) (rejecting Plaintiff's effective vindication argument because she had offered no evidence on the "chilling effect" of similarly situated potential litigants as opposed to its effect

on merely the actual plaintiff in the subject case.) (See also, Howell v. Rivergate Toyota, Inc., 144 Fed. Appx. 475 (6th Cir. 7/25/05)).

Plaintiff has presented no evidence proving or even suggesting there will be a chilling effect on a class of apartment residents seeking legal redress under FHA for accommodation of their emotional support cats. No evidence was submitted about the incomes, work histories, or financial wherewithal of apartment residents asserting FHA claims. And unlike the situation in Morrison involving claims brought under Title VII by employees discharged from their employment – and thus, unemployed – for allegedly discriminatory reasons, no such assumptions can be made about the employment, incomes, or financial means of apartment residents seeking to assert FHA claims. To meet her substantial burden of proof, Plaintiff must present evidence about the chilling effect on a class of similarly situated apartment residents, something she has failed to do here. Consequently, under Morrison, a case upon which she heavily relies, Plaintiff has failed to prove an essential element of her claim, mandating that this Motion be denied.

## F.   Plaintiff Has Failed to Offer Any Evidence Comparing the Cost of Arbitrating FHA Cases to the Cost of Litigating FHA Cases

In addition to offering no proof in support of Morrison's "revised case-by-case approach," Plaintiff has offered the Court no evidence allowing it to compare the costs of arbitrating FHA cases to the costs of litigating FHA cases in Federal Court.[5] This, too, is fatal to

---

[5] As Plaintiff briefly mentions in her Memorandum (Doc. 83-1, p. 5), in dicta Morrison references one 2002 Public Citizen report (Public Citizen is Ralph Nader's consumer advocacy organization whose slogan is "We Fight for You to Take on Corporate Power- Corporations Have Lobbyists. People Need Advocates Too," not a peer reviewed scholarly publication) comparing the filing costs of arbitrating versus litigating employment discrimination cases. As discussed below, Ralph Nader's claim that arbitration costs more than litigation has been rejected by the U.S. Supreme Court, the U.S. Fifth Circuit and the Louisiana Supreme Court, and regardless, Plaintiff has offered no evidence that arbitrating her FHA case will be substantially more expensive than litigating her FHA case.

her Motion. Jurisprudence analyzing the effective vindication defense Plaintiff advances here hold that, to prevail, the party resisting payment of arbitration costs must offer evidence regarding the comparative cost of litigation, proving that the cost differential between arbitration and litigation in her specific case would prohibit her from effectively vindicating her claims.

In <u>James v. McDonald's Corp.</u>, 417 F.3d 672 (7th Cir. 8/2/05), Plaintiff raised the effective vindication defense in an effort to vitiate a cost-splitting clause in an arbitration agreement. In support of her Motion, she supplied an Affidavit from an American Arbitration Association arbitrator stating she would be responsible for paying between $38,000 and $80,000 in fees and service costs <u>before</u> arbitration commenced to pursue her claims. <u>Id</u>. at 679. Like Plaintiff here, she presented her own sworn Affidavit stating she did not have the financial resources to advance those fees. <u>Id</u>. Plaintiff in <u>James</u> relied on <u>Green Tree</u> just as Plaintiff does in the instant case. Affirming the District Court's denial of her Motion, the Seventh Circuit held: "Ms. James has not provided any evidence concerning the comparative expense of litigating ***her claims***.[6] The cost differential between arbitration and litigation is ***evidence highly probative*** to Ms. James' claim that requiring her to proceed through arbitration rather than through the courts will effectively deny her recourse." <u>Id</u>. at 679-680 (Emphasis added).

The Fourth Circuit arrived at the same result in <u>Bradford v. Rockwell Semiconductor Systems, Inc.</u>, 238 F.3d 549 (4th Cir. 1/22/01), holding:

> We believe that the appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the *expected*

---

[6] Not claims under a separate statutory scheme having nothing to do with her case; <u>her</u> claims.

> *cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims*. <u>Id</u>. at p. 556 (Emphasis added).

Addressing the argument that a party must pay arbitrators and not Judges, the Court concluded:

> [W]e believe that the proper inquiry… is not where the money goes but rather the amount of money that ultimately will be paid by the claimant. Indeed, we fail to see how a claimant could be deterred from pursuing his statutory rights in arbitration simply by the fact that his fees would be paid to the arbitrator where the overall cost of arbitration is otherwise equal to or less than the cost of litigation in court. <u>Id</u>.

District Courts within the Fifth Circuit asked to sever and invalidate cost-splitting provisions in arbitration agreements have come to the same conclusion, holding: "As a part of this analysis, the plaintiff must present evidence that the costs of arbitration effectively deny her legal recourse, *when compared to the cost of proceeding in a court of law.*" <u>Del-Wise</u>, <u>supra</u> at p. 6 (Emphasis added). Likewise, in the Fair Labor Standards Act case of <u>Ivie v. Multi-Shot, LLC</u>, 2016 WL 4446634 (S.D. Tex. 8/24/16), the Court refused to invalidate a cost-splitting provision because plaintiff had failed to offer any evidence – not argument, evidence – about the comparative cost of litigation in Federal Court, holding:

> The cost-prohibitive nature of [a party's] claims in arbitration is not an exercise in comparing the expense of a new category of costs against not having to bear any expense in that category. The question is whether all of the costs of arbitration weighed against all of the costs of litigation, render the claims practically incapable of vindication in arbitration. <u>Id</u>. at p. 2.

Noting that arbitration is "more efficient and streamlined than litigation," the Court denied plaintiff relief citing her failure to offer any evidence suggesting the overall costs of arbitration would exceed those of litigation in denying his Motion. <u>Id</u>.

Courts within the United States District Court for the District of Columbia are in accord with the above authorities. In Toledano v. O'Connor, Plaintiff, a 90-year-old individual who subsequently passed away, resisted an arbitration agreement's cost-splitting provision, supplying a Declaration to the Court stating he could not afford to pay arbitration costs because he lived on a fixed income and had other expenses such as rent and food. The Court upheld the cost-splitting provision, holding that Plaintiff offered no evidence regarding the "comparative cost of arbitrating and litigating this dispute." Id. at 150. Plaintiff's failure to offer any "estimate of the projected cost of *this* federal court litigation, including discovery and attorneys' fees" was fatal to his claim. Id. As such, it was "all but impossible for this Court to evaluate whether the forecasted arbitration costs would unduly prohibit the vindication of plaintiff's right…." Id. See also, Howell v. Rivergate Toyota, Inc., supra at 481 (Plaintiff provided no evidence allowing the Court to weigh the costs of arbitration versus litigation costs).

Here, while Plaintiff has submitted speculative estimates of what arbitration *might* cost and how long it *might* take by looking at unrelated employment cases, there is absolutely no evidence in the record comparing the costs of arbitrating FHA cases over an ESA cat to the cost of litigating FHA cases over an ESA cat. She incorrectly assumes that there would be zero costs associated with litigating this case in Federal Court. She presents the Court with a false choice. As the Court explained in Ivie, supra, one cannot compare arbitration costs versus $0.00 litigation costs. Litigating in Federal Court is not free, nor is it quick. Far from it. As discussed below, it can be time consuming and very expensive, much more expensive than arbitration.

Because Plaintiff has offered absolutely no actual evidence of how much it would cost and how long it would take to litigate her FHA case in Federal Court, she has failed to meet her substantial burden of proof on this issue. And this stands to reason. The United States Supreme Court, the U.S. Fifth Circuit and the Louisiana Supreme Court have all long recognized the cost-saving benefits of arbitration as compared to litigation.

### G.   Arbitration is More Economical Than Litigation

The United States Supreme Court has acknowledged that arbitration offers a more "quick and economical resolution of claims" as compared to litigation. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987). Indeed, the "overarching purpose of the FAA...is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." AT&T Mobility v. Concepcion, 563 U.S. 333 (2011). "And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution." Id, citing, 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 269 (2009).

Rejecting the notion that arbitration favors the wealthy and harms the economically disadvantaged, the Fifth Circuit recently held: "[A]rbitration can nevertheless benefit both sides by reducing litigation costs, which disproportionately harm the less well-off." Sun Coast Resorts, Inc. v. Conrad, 956 F.3d 335 (5th Cir. 2020). See also, Texaco Exploration and Production Co. v. Amclyde Engineered Products Co., Inc., 243 F.3d 906 (5th Cir. 2001) ("[A]rbitration usually provides a speedier, more economical form of dispute resolution.").

In Bradford v. Rockwell Semiconductor Systems, Inc., supra, the Fourth Circuit observed:

> The benefits of arbitration are well documented. For example, we have previously noted that 'the arbitration of disputed enables the parties to avoid the costs associated with pursuing a judicial resolution of their grievances. By one estimate, litigating a typical employment dispute costs at least $50,000 and takes two and one-half years to resolve. Accordingly, 'the parties agree to arbitrate and trade 'the procedures and opportunity for review of the courtroom for the simplicity, informality and expedition of arbitration.' (Id. citing Gilmer, 500 U.S. at 31)

In Hodges v. Reasonover, 2012-0043 (La. 7/2/12), 103 So.3d 1069, the Louisiana Supreme Court recognized the cost-saving benefits of arbitration versus litigation, holding:

> It is an unfortunate reality that litigation can be a costly endeavor, whether in state court, federal court or arbitration. Initial filing fees are only a small comparatively, low cost is often touted as one of the primary benefits of arbitration over litigation. Arbitration generally provides for streamlined discovery, little to no motion practice and flexible procedure, all of which may potentially save significant amounts of time and money and thus recoup the initial filing costs.[7] (citing, Drahozal, Arbitration Costs and Forum Accessibility: Empirical Evidence, University of Michigan Journal of Law Reform, v. 41(2008)).

In sum, Plaintiff has failed to meet her burden of proving arbitrating her FHA claim would be significantly more expensive than litigating her FHA claim, mandating that her Motion be denied.

### H.   Plaintiff Has Offered No Evidence She Will Incur Arbitration Costs

According to Green Tree, 531 U.S. at 92, those challenging cost-splitting clauses bear the burden of proving "the likelihood of incurring" those costs. See also, Van Buren, supra. The Court in Green Tree refused to invalidate the cost-splitting clause simply because of the "speculative" risk that the claimant – not the attorney, the claimant – may incur those costs.

---

[7] There will be no initial filing costs here because MAPS graciously waived them.

There is no evidence in the record indicating what type of fee arrangement exists between Plaintiff and her counsel. As the Court recognized in Ivie, supra, a case brought under the Fair Labor Standard Act, plaintiffs' attorneys often accept matters on a contingency fee basis, agreeing to advance case procurement costs (filing fees, service fees, discovery costs, expert witnesses fees, travel expenses, arbitration costs, etc.) in the hopes of a large recovery from which they will recover their fee and reimbursement of costs. Morrison also recognized this fact in the context of employment discrimination cases, noting: "In many, if not most cases employees (and former employees) bringing discrimination claims will be represented by attorneys on a contingency fee basis. Thus, many litigants will face minimal costs in the judicial forum, as the attorney will cover most of the fees of litigation an advance the expenses incurred in discovery." Id. at 664.

While Defendants admit they have no information concerning the specific fee arrangement present here, the same holds true for this Honorable Court. Plaintiff has offered no evidence proving that she, rather than her attorney, is contractually bound and obligated to advance case procurement costs. However, Morrison encourages us to assume a contingency fee arrangement is in place. And as Plaintiff has left us no choice but to wade in the realm of speculation, given Plaintiff's professed lack of financial resources, it would also be safe to assume counsel advanced the costs of filing this Federal Court action, serving several defendants via private process server, and securing the Declarations of Dr. Doster and Ms. Owen.

Indeed, if Plaintiff did personally advance these costs, it would undermine her claim of poverty, of only having $25.00 to her name. If her attorney advanced these costs, it would

undermine her claim that she will be personally responsible for paying arbitration costs. Either way, her proof is insufficient to prevail. Because Plaintiff did not offer any evidence regarding who will actually incur arbitration costs, she has failed to meet her burden of proof under Green Tree. See also, Zephyr Haven Health & Rehab Center, Inc. v. Hardin, 122 So.3d 916, 923 (D.C. FL., 2nd Dist. 9/27/13) (refusing to invalidate cost-splitting clause because plaintiff offered no proof about her contractual agreement with counsel, specifically who will be responsible to advance costs).

Finally, if there is a contingency fee agreement, it would be fundamentally unfair to compel Defendants to write a blank check to Plaintiff's counsel to arbitrate this case, funding a case counsel is contractually obligated to fund. Contingency fee contracts are inherently risky. Attorneys know this on the front end. Attorneys accept the risk of advancing case procurement costs in exchange for the promise of a large pay-day in the form of a percentage of the clients' total recovery. This is how the system works. Shifting this risk from counsel to Defendants by forcing Defendants to front all of Plaintiffs' case procurement expenses, in direct contravention of the apartment lease contract and arbitration agreement Plaintiff voluntarily signed and this Honorable Court validated undermines this arrangement. It hands to counsel a risk-free, cost-free opportunity to recover a large contingency fee, while offering an incentive to over-litigate and over-complicate the case before the arbitrator as occurred in this forum. If there is a desire to swing for the fences in the hopes of recovering a large award and thereby a large fee, counsel – not Defendants – should fund this exercise. There should be no trepidation at all in advancing all

costs necessary to prosecute this case through arbitration if it is as much of a slam dunk as has been suggested throughout the pleadings.

III.    **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that this Honorable Court **DENY** Plaintiff's Motion to Sever the Cost-Splitting Provision in the Arbitration Agreement (Doc. 83).

Respectfully submitted,

/s/ *James C. Rather, Jr.*
JAMES C. RATHER, JR. (#25839), T.A.
ALKER & RATHER, LLC
4030 Lonesome Road, Suite B
Mandeville, LA 70448
Telephone: (985) 727-7501
Fax No.: (985) 727-7505
**ATTORNEY FOR DEFENDANTS**